'22CV1165 W    DEB

Arash Sadat (SBN 279282)
arash@msdlawllp.com
MILLS SADAT DOWLAT LLP
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
Telephone: (213) 613-9434

Attorneys for Plaintiff
Nathaniel Singer

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL SINGER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SWAP FINANCIAL GROUP LLC, a New Jersey limited liability company,<br><br>Defendant. | Case No. '22CV1165 W    DEB<br><br>**PLAINTIFF NATHANIEL SINGER'S COMPLAINT FOR:**<br><br>1. **DECLARATORY JUDGMENT;**<br>2. **VIOLATION OF LABOR CODE SECTION 925; AND**<br>3. **UNFAIR COMPETITION**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Nathaniel Singer, an individual ("Plaintiff"), brings this action for a declaration that the restrictive covenants, choice-of-law, and choice-of-venue provisions included in Plaintiff's employment agreement with defendant Swap Financial Group, LLC, a New Jersey limited liability company ("Swap Financial") are void and unenforceable under California Labor Code section 925 and California Business and Professions Code section 16600, and alleges as follows:

**THE PARTIES**

1. From January 1, 2010 through the present, Plaintiff Nathaniel Singer was and is a resident of San Diego County, California. Plaintiff was employed by Swap Financial as a Senior Managing Director from January 1, 2008 until July 22, 2022.

2. Defendant Swap Financial Group, LLC is a New Jersey limited liability company with its principal place of business in New York. Swap Financial is a financial advisory firm, specializing in providing strategic and transactional advice related to taxable and tax-exempt bonds, interest rate swaps and various other derivative products, and expert testimony related to various financial products and industry practices.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because: (a) the action is between citizens of different states; and (b) the value of the legal and equitable relief sought by Plaintiff exceeds the minimum amount in controversy threshold of $75,000, exclusive of attorney's fees, interests, and costs.

4. Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Southern District of California because:

    a. Swap Financial has intentionally availed itself of the laws by conducting business in this district;

    b. Swap Financial employed individuals, including Plaintiff, in this district;

    c. Swap Financial is subject to personal jurisdiction in this district; and

    d. Plaintiff was harmed by Swap Financial's conduct within this district.

//

**GENERAL ALLEGATIONS**

5. Plaintiff seeks relief from this Court to prevent further disruption of his ability to work within his chosen profession and to prevent further disruptions to the business activities of third parties, including major public institutions and non-profit entities to whom Plaintiff provides business services. Swap Financial, Plaintiff's former employer, seeks to impose unlawful restrictions upon Plaintiff's right to conduct business and service these clients by attempting to enforce provisions in employment agreements that are void and unenforceable as a matter of law.

**A.     The Parties Enter Into an Employment Agreement**

6. On or about January 9, 2015, Plaintiff entered into an employment agreement ("Employment Agreement") with Swap Financial. The Employment Agreement had a five-year term, expiring in January 2020.

7. The Employment Agreement contains numerous restrictive covenants, each of which Swap Financial demanded as a condition of Plaintiff's employment. These restrictive covenants include:

> **12.     Non-Solicitation/No Piracy.** In an effort to protect and maintain the confidentiality of Company trade secrets, and Company confidential and proprietary information, and other protectable interests, Executive agrees that during Executive's employment with the Company and for a period of twenty-four (24) months after the cessation of such employment (hereinafter, the "Non-Solicitation Period"), Executive shall not, directly or indirectly:
>
> (a)     for or on behalf of a competing business, solicit, encourage, induce, provide services to, contract with, or accept business from any entity or individual which (i) was or has been a client of the Company or its affiliates within two (2) years prior to the cessation of Executive's employment, (ii) has received a new business proposal from the Company or its affiliates within two (2) years prior to the cessation of Executive's employment; provided that Executive has actual knowledge of such new business proposal, or (iii) was or is a prospective client of the Company or its affiliates with which Executive has had business-related communications within two (2) years prior to the cessation of Executive's employment or about which Executive has marketing information or confidential information;

(b)  solicit, encourage, entice or induce any person or entity with the effect or for the purpose (which need not be the sole or primary effect or purpose) of: (i) causing any funds with respect to which the Company or its affiliates provides services to be withdrawn from the Company, (ii) causing any client or prospective client of the Company to refrain from engaging the Company or any of its affiliates to provide services, or (iii) causing any client to terminate, diminish, or adversely impact its relationship with the Company or its affiliates; and/or

(c)  induce, offer, assist, solicit, encourage or suggest, in any manner whatsoever, (i) that Executive or another business or enterprise offer employment to or enter into a business affiliation with any employee, agent or representative of the Company or its affiliates, or (ii) that any employee, agent or representative of the Company or its affiliates terminate his employment or business affiliation with the Company or its affiliates; or

(d)  hire, employ or contract with any employee, agent or representative of the Company or its affiliates.

13.  **Non-Competition.**  In an effort to protect and maintain the confidentiality of Company trade secrets, and Company confidential and proprietary information, and other protectable interests, Executive agrees that during Executive's employment with the Company and for a period of twelve (12) months after the cessation of such employment (hereinafter, the "Non-Competition Period"), Executive shall not, directly or indirectly, render services or advice to, become affiliated with, become employed by, invest in, own, manage, operate, control, participate in, have a financial or other interest in, or otherwise become associated or connected with or in any manner (either as an individual, partner, joint venturer, owner, manager, stockholder, employee, partner, officer, director, agent, consultant or otherwise) any person or entity that provides services or products which are competitive with the products or services of the Company or any of its affiliates; provided, however, an Executive may own stock in any publicly held company, provided the amount thereof shall not exceed 5% of the issued and outstanding stock of such publicly held company.

[ . . .]

15.  **Subsequent Employment and Enforcement.**

(a)  **Advise the Company of New Employment.**  In the event of a cessation of Executive's employment with the Company, and during the Non-Solicitation Period and Non-Competition Period (as defined in paragraphs 12 and 13, respectively, Executive agrees

to disclose to the Company, the name and address of any new employer or business affiliation within ten (10) days of Executive's accepting such position. In the event that Executive fails to notify the Company of such new employment or business affiliation as required above, the restrictions in paragraphs 12 and 13 shall be extended by a period equal to the period of nondisclosure.

**(b)** **Executive's Ability to Earn Livelihood.** Executive acknowledges that, in the event of a cessation of Executive's employment with the Company, for any reason and at any time, Executive will be able to earn a livelihood without violating the provisions of paragraphs 12 and 13 of this Agreement. Executive's ability to earn a livelihood without violating paragraphs 12 and 13 of this Agreement is a material condition of Executive's employment with the Company. Executive and the Company acknowledge that Executive's rights have been limited by this Agreement only to the extent reasonably necessary to protect the legitimate interests of the Company.

**(c)** **Enforcement.**

(i) Executive agrees that if Executive violates the covenants and agreements set forth above (including paragraphs 10, 11, 12, 13 and 14 the Company would suffer irreparable harm, and that such harm to the Company may be impossible to measure in monetary damages. Accordingly, in addition to any other remedies which the Company may have at law or in equity, the Company shall have the right to have all obligations, undertakings, agreements covenants and other provisions of this Agreement specifically performed by Executive, and the Company shall have the right to obtain preliminary and permanent injunctive relief to secure specific performance, and to prevent a breach or contemplated breach, of this Agreement. In such event, the Company shall be entitled to an accounting and repayment of all profits, compensation, remunerations or benefits which Executive, directly or indirectly, has realized or may realize as a result of, growing out of, or in conjunction with any violation of any partial or justified liquidated damages, such remedies shall be in addition to and not in limitation of any injunctive relief or other rights or remedies to which the Company is or may be entitled at law or in equity under this Agreement and that, in the event the Company is required to enforce the terms of this Agreement through court proceedings, the Company shall be entitled to reimbursement for all legal fees, costs and expenses incident to enforcement.

(ii) Executive understands and agrees that the covenants, undertakings and agreements in paragraphs 10, 11, 12, 13 and 14 herein will survive the termination of this Agreement or

the cessation of Executive's employment with the Company for any reason. The existence of any claim or cause of action that Executive may have against the Company or any other person, including but not limited to, any claim under this Agreement, will not constitute a defense or bar to the enforcement of any of the covenants and undertakings contained in paragraphs 10, 11, 12, 13 and 14 (or any of them) herein.

(iii)   Executive recognizes and acknowledges that the restrictions set forth in paragraphs 10, 11, 12, 13 and 14 above: (A) are necessary to preserve the Company's legitimate business interests and information and goodwill; (B) are appropriately limited in time and scope; and (C) will not prevent Executive from earning a livelihood.

(iv)   Executive expressly acknowledges that the restrictions and covenants set forth in paragraphs 10, 11, 12, 13 and 14, are a material part of the consideration bargained for by the Company and, without Executive's agreement to be bound by such provisions, the Company would not have agreed to enter into this Agreement.

(v)   If any court of competent jurisdiction construes any of the restrictions or covenants set forth in paragraphs 10, 11, 12, 13 and 14 above, or any part thereof, to be invalid or unenforceable because of the duration, scope or geographic area covered thereby, such court will have the power to reduce the duration, scope or geographic area of such provision and, in its reduced form, such provision will then be valid and enforceable and will be enforced.

8.   The Employment Agreement also contains the following provisions concerning choice-of-law and forum selection:

**15.   Miscellaneous.**

[ . . . ]

(b)   **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without regard to its conflicts of laws principles).

(c)   **Forum Selection.** The parties irrevocably consent to the exclusive jurisdiction and venue of the courts of the State of New Jersey or the United States District Court for the District of New Jersey in all matters arising out of or relating to this Agreement or otherwise arising between the parties, and the parties waive any

- 5 -

objection based on forum non conveniens and any objection to venue in connection therewith.

9. Plaintiff lived and worked in San Diego County, California at the time the parties entered into the Employment Agreement and throughout his subsequent employment with Swap Financial.

**B.    The Parties Amend the Employment Agreement**

10. With the Employment Agreement set to expire in January 2020, Plaintiff and Swap Financial in or about November 2019 discussed the terms of Plaintiff's continued employment with Swap Financial. In or about November 2019, Plaintiff proposed to the majority owners of Swap Financial and its internal counsel an amended Employment Agreement which, if accepted by Swap Financial, would—among other modifications—lift the restrictive covenants contained in the Employment Agreement and to shift the choice-of-law and choice-of-forum to New York and California. The majority owners of Swap Financial and the company's counsel rejected Plaintiff's proposed revisions and required, as a condition of Plaintiff's continued employment, that the restrictive covenants, choice-of-law, and choice-of-forum provisions remain in place.

11. Despite Swap Financial's refusal to agree to modify the foregoing terms, the parties on or about November entered into Amendment No. 1 to the Employment Agreement (the "Amendment"). The Amendment—among other changes—extended Plaintiff's term of employment through December 31, 2020.

12. Plaintiff was not represented by legal counsel in negotiating the Amendment, nor did Plaintiff consult with legal counsel prior to executing the Amendment.

**C.    Swap Financial Terminates Plaintiff**

13. On or about December 15, 2021, Swap Financial notified Plaintiff that it would not renew Plaintiff's Employment Agreement, as amended. Swap Financial continued employ Plaintiff on an at-will basis for approximately seven months thereafter.

14. On July 22, 2022, Swap Financial terminated Plaintiff's employment. In a July 22, 2022 letter to Plaintiff, Swap Financial wrote: "You are reminded that you are bound by the

post-employment obligations regarding confidentiality, intellectual property, non-solicitation/no piracy, and non-competition (as set forth in paragraphs 10 through 15 of your January 2015 Employment Agreement)."

**D.     Court Intervention Is Required so that Plaintiff's Clients, Including California-Based Public and Non-Profit Entities, Can Continue to Receive Plaintiff's Services**

15.     In the immediate aftermath of his termination, many of Plaintiff's clients—including major public institutions and non-profit entities such as the University of California, The J. Paul Getty Trust, and the City of Chicago—inquired as to whether Plaintiff would continue to work with them. Many of these clients have projects requiring immediate assistance and desire to have Mr. Singer continue to advise them based upon his more than 35 years of experience in the industry and his years of specific experience working with each of them. Despite this, Swap Financial has flatly refused to waive the unlawful restrictive covenants contained in the Employment Agreement, as amended.

16.     Restrictive covenants such as those found in the Employment Agreement, as amended, are void as a matter of California public policy. California Business and Professions Code section 16600 unambiguously provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." As a citizen of the State of California, Plaintiff is entitled to the protections of the laws of the State, including the laws prohibiting non-competition and noninterference provisions.

17.     The purpose and effect of the illegal and unenforceable restrictive covenants is to restrict the employment opportunities and rights of advancement of current and former Swap Financial employees, such as Plaintiff, to work in California, to restrain Plaintiff from earning a living in his chosen profession in the State of California, and to disrupt the business operations of third parties, many of whom rely on Plaintiff to provide financial consulting advice on complex financial matters.

18.     In addition, the "Governing Law" and Forum Selection" provisions of the Employment Agreement, as amended, violate California Labor Code section 925, as they call for interpretation of the agreement under New Jersey law and in a New Jersey court.

## FIRST CAUSE OF ACTION

### Declaratory Relief

19. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though set forth fully herein.

20. Plaintiff seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

21. An actual, present, and justiciable controversy exists between Plaintiff and Swap Financial with respect to the rights and duties of the parties under the terms of the Employment Agreement, as amended. Plaintiff contends that the restrictive covenants, venue provisions, and choice of law provisions found in the Employment Agreement, as amended, are governed by California law and are invalid and unenforceable as a matter of law under California Business and Professions Code section 16600 and California Labor Code section 925. Swap Financial contends that the non-competition, venue, and choice of law provisions are enforceable and can be applied to preclude Plaintiff from working for his clients for a period of time following the termination of Plaintiff's employment with Swap Financial.

22. No adequate remedy other than that herein prayed for exists by which the rights of the parties hereto may be determined.

23. A judicial declaration is necessary and appropriate at his time so that Plaintiff can practice his chosen profession in California without fear of reprisal and receive lawfully earned compensation and without exposing him to liability for alleged violations of void and unenforceable provisions of the Employment Agreement, as amended.

24. Plaintiff desires a declaration of rights under the Employment Agreement, as amended, as follows:

    a. That the restrictive covenants found in the Employment Agreement, as amended, are void and violate California Business and Professions Code section 16600;

    b. That the forum selection and choice of law provisions in the Employment Agreement, as amended, are unlawful and thereby void under California

Labor Code section 925;

c. That California law applies to Plaintiff's prior employment with Swap Financial;

d. That California law applies to determine the enforceability of the restrictive covenants contained in the Employment Agreement, as amended; and

e. That Plaintiff is permitted to practice his chosen profession as a resident of the State of California.

## SECOND CAUSE OF ACTION

### Violation of Labor Code Section 925

25. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though set forth fully herein.

26. California Labor Code section 925 prohibits employers from requiring an employee that primarily resides and works in California, as a condition of employment, to agree to a provision that either: (a) requires the employee to adjudicate outside of California a claim arising in California; or (b) deprives the employee of the substantive protection of California law with respect to a controversy arising in California.

27. Any provision of a contract that violates California Labor Code section 925 is voidable by the employee, and, and if such a provision is rendered void, the dispute shall be adjudicated in California and California law shall govern the dispute.

28. In addition to injunctive relief and any other remedies available, a court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees.

29. California Labor Code section 925 applies to any contract entered into, modified, or extended on or after January 1, 2017.

30. Plaintiff has, at all times relevant to this dispute, lived and worked for Swap Financial in San Diego County, California.

//

31. On or about November 29, 2019, Plaintiff and Swap Financial entered into the Amendment, which extended Plaintiff's term of employment and included:

    a. A "Governing Law" provision requiring Plaintiff to adjudicate under New Jersey law any dispute with Swap Financial concerning his employment; and

    b. A "Forum Selection" provision requiring any such dispute to be litigated in New Jersey court.

32. These provisions void under Labor Code section 925 and Plaintiff is entitled to injunctive relief declaring these provisions void, damages in an amount to be proven at trial, and attorney's fees and costs incurred in connection with enforcing his rights under California law.

### THIRD CAUSE OF ACTION

### Unfair Competition (Cal. Bus. & Prof. Code § 17200, *et seq.*)

33. Plaintiff incorporates by reference all preceding paragraphs of this complaint as though set forth fully herein.

34. The conduct of Swap Financial constitutes unlawful, unfair, and fraudulent business acts or practices under California Business and Professions Code section 17200, *et seq.*

35. Swap Financial's acts of unlawful, unfair, and fraudulent competition have caused harm to competition, to consumers, and to its competitors.

36. Swap Financial's acts of unlawful, unfair, and fraudulent competition have proximately caused Plaintiff to suffer substantial injury in fact and loss of money and/or property in an amount to be proven at trial.

37. Swap Financial's acts of unlawful, unfair, and fraudulent competition also have caused irreparable and incalculable injury to Plaintiff and to his business and goodwill, and, unless enjoined, could cause further irreparable and incalculable injury, whereby Plaintiff has no adequate remedy at law, entitling Plaintiff to equitable remedies including injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Swap Financial as follows:

//

| | | |
|---|---|---|
| A. | For a declaration that the restrictive covenants found in the Employment Agreement, as amended, operate as an unlawful restraint upon the employment of Plaintiff, and are thereby void under California Business and Professions Code section 16600. |
| B. | For a declaration that the forum selection and choice of law provisions in the Employment Agreement, as amended, are unlawful and thereby void under California Labor Code section 925; |
| C. | For a declaration that California law applies to Plaintiff's prior employment with Swap Financial; |
| D. | For a declaration that California law applies to determine the enforceability of the restrictive covenants contained in the Employment Agreement, as amended. |
| E. | For a declaration that Plaintiff is permitted to practice his chosen profession in the State of California. |
| F. | For a temporary restraining order and/or a preliminary injunction enjoining Swap Financial from enforcing: (a) the restrictive covenants contained in the Employment Agreement, as amended; and (b) the choice-of-law and choice-of-forum provisions contained in the Employment Agreement, as amended. |
| G. | For damages, restitution, and/or other monetary relief in an amount to be proven at trial. |
| H. | For attorney's fees to which Plaintiff is entitled both by contract and by statute. |
| I. | For costs of suit incurred herein. |
| J. | For such other and further relief as the Court deems just and proper. |

Dated: August 8, 2022                    MILLS SADAT DOWLAT LLP

                                          By: */s/Arash Sadat*
                                                   Arash Sadat

                                          Attorneys for Plaintiff
                                          Nathaniel Singer

COMPLAINT